U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 7 2020

CLERK U.S. DISTRICT COURT
By: _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:20-MJ-**078** |
| CHARLES ADDISON COCKRELL (01)<br>DERRICK TREVION ELLIS (02) | |

## CRIMINAL COMPLAINT

I, Ruben Prieto, a Senior Special Agent with the United States Secret Service, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

Beginning in or about May 2019 and continuing through on or about June 13, 2019, in the Northern District of Texas and elsewhere, **Charles Addison Cockrell** and **Derrick Trevion Ellis**, defendants, did unlawfully and knowingly execute a scheme to defraud and to obtain money under the custody and control of USAA Federal Savings Bank (USAA FSB), a financial institution the deposits of which were federally insured by the FDIC, by causing counterfeit checks to be deposited into a USAA FSB account and thereafter withdrawing cash funds and transferring funds from that account to others, knowing they had no right to the proceeds of said checks.

In violation of 18 United States Code, §1344 (2).

## INTRODUCTION

1. Affiant has been employed as a Special Agent with the United States Secret Service (USSS) since May 5, 2003, and is currently a Senior Special Agent assigned to the Criminal Investigation Squad in the USSS Dallas Field Office. Affiant's duties include investigating violations of United States currency laws, including counterfeiting, money laundering, financial fraud, and forgery of U.S. securities. Affiant has received training in the detection and identification of counterfeit currency, checks, and identifications.

2. The facts and information contained in this Affidavit is based upon Affiant's personal knowledge and observations made during the course of this investigation, information conveyed to Affiant by other law enforcement officials, and review of Affiants records, documents, and other evidence obtained during this investigation. This affidavit does not contain all of the information known to Affiant regarding the targets of the investigation. Instead, Affiant has included in this affidavit facts believed to be sufficient to support a probable cause finding for the issuance of the requested criminal complaint.

3. As set forth below, Affiant believes there is probable cause to believe that **Charles Addison Cockrell** and **Derrick Trevion Ellis** participated in a scheme, along with other unidentified individuals, to manufacture fraudulent commercial checks and identifications for the purpose of obtaining cash funds to be divided and shared with other participants in their scheme to violate Title 18, United States Code, Section 1344.

## PROBABLE CAUSE

4. On 6/9/19, officers of the Saginaw Police Department made contact with defendant **Charles Addison Cockrell** after having checked the license plate of the vehicle which he was driving and learning that multiple warrants were associated with that vehicle. **Cockrell** falsely identified himself to the officers as Bryant Dartagan, DOB 5/20/75. While conversing with **Cockrell**, the officer observed a syringe in plain view on the center console of the vehicle. When the officer asked **Cockrell** why he had a syringe in the vehicle, **Cockrell** replied it was because he did Meth.

5. A probable cause search of the vehicle followed which revealed identification for a Bryant Dartagan, which did not match **Cockrell**, however he continued to maintain that his real name was Bryant Dartagan. A records check by the officers revealed his true identity as **Charles Addison Cockrell** and also an active warrant for parole violation. When asked by the officers if he was aware he had a warrant, **Cockrell** stated that he was aware of the warrant and that was the reason he gave

officers the false name. The search of the vehicle further revealed multiple laptop computers, computer external hard drives, computer printers, card readers, card embossers, multiple state ID's and birth certificates belonging to others, multiple blank and altered checks and a sheet of paper with images of $20 Federal Reserve Notes printed on it.

6. On 6/13/19, Affiant conducted an NCIC/NLETS query of **Charles Addison Cockrell**, which revealed that he had an extensive criminal history with arrests and convictions for offenses of Forgery and Bank Fraud dating back to 2009.

7. On 7/30/19, Affiant interviewed the owner of Cox's Fine Floors, 650 Country Club Road, Wylie, TX 75098 who provided statements from her business' checking account containing images of two unauthorized checks, totaling $2802.10, that had been negotiated and cleared her business account. One check was issued in the name of Bryant Dartagan in the amount of $1302.10 and the other was issued in the name of Derrick Ellis for $1500.00. The owner of Cox's Fine Floors advised Affiant that both checks were fraudulent because she is the only authorized signatory at her business and the signatures on the checks were not her own, and that she had no record of either Dartagan or Ellis as legitimate payees of her business.

8. On 8/7/19, Affiant interviewed Bryant Dartagan, whose personal identifying information was found in **Cockrell's** possession at the time of his arrest and who was the purported payee on one of the fraudulent checks. Mr. Dartagan advised that he had did not know **Cockrell** nor **Ellis**, is not familiar with Cox Fine Floors and was not owed money by that business, and that no one had permission to possess his personal identifying information.

9. On 1/29/20, Affiant interviewed **Derrick Trevion Ellis** at the McLennan County Jail. Prior to questioning **Ellis** was advised of and waived his Miranda Rights. During the interview Affiant showed **Ellis** copies of the two checks from Cox's Fine Floors which had been negotiated and he confirmed that he deposited both checks - one

issued to Bryant Dartagan in the amount of $1302.10 on 5/28/19 and the other issued to Derrick Ellis in the amount of $1500.00 on 5/30/19.

Also during the interview, Affiant showed **Ellis** a photograph of Jeff Snowden and **Ellis** confirmed that person in the photograph was the individual providing him with the fraudulent checks and the one he knew as "Snow". **Ellis** advised Affiant that he deposited the fraudulent checks he received from Snowden into his USAA FSB account using a mobile deposit application on his personal cell phone. **Ellis** also advised Affiant that Snowden had been with him at the time he made the actual deposits of the two fraudulent checks from his personal cell phone in Lake Worth, TX. **Ellis** further advised that once the funds were available in his account, at the direction of Snowden, he would wire transfer a portion of the funds to reloadable ATM card accounts provided him by Snowden via wire transfer applications on his phone.

**Ellis** advised he also made two wire transfers from his USAA FSB account on 6/3/19 to Timothy Gerald for $1800 and to Jasmine L for $2000. **Ellis** confirmed that Snowden provided the account numbers to him for the purpose of transferring the proceeds obtained from depositing fraudulent checks.

**Ellis** advised **Affiant** that he had agreed to deposit checks given to him by Snowden, into his USAA FSB checking account and wire transfer portions of the funds to accounts numbers Snowden and other conspirators in the group had set up using stolen identities, for the purpose of receiving the fraudulently obtained funds. **Ellis** stated that, because of his drug addiction, all the funds he received were used to purchase Methamphetamine and to pay his bills.

10.   On 12/30/19, Affiant interviewed **Charles Addison Cockrell** at the Tarrant County Jail, Green Bay Facility. Prior to questioning, **Cockrell** was advised of and waived his Miranda Rights. During the recorded interview, **Cockrell** stated he wanted to cooperate with this investigation and offer information about the scheme he was involved in, along with other individuals, to manufacture fraudulent commercial checks and identifications and to negotiate those checks for the purpose of obtaining cash proceeds.

**Cockrell** admitted to working in conjunction with several individuals to commit this fraud. During the interview **Cockrell** provided the following information:

a. A female known to him as "Adrianna Sosa" would manufacture fraudulent commercial checks using several victim's genuine bank account numbers that were obtained through various forms of theft. The fraudulent checks found in his possession at the time of his arrest were made by Sosa using the computer and printer equipment seized by Saginaw Police.

b. **Cockrell** used this same equipment to manufacture fraudulent State of Texas identification cards and temporary identifications using his photograph and the identifiers of identity theft victim, Brant Dartagan, for the purpose of negotiating fraudulently manufactured commercial checks.

c. **Cockrell** was shown a copy of images found on his computers of several Texas State ID's and confirmed he and others in the group were using these images to create fake ID's to use for negotiating the fraudulent checks. **Cockrell** identified a female whose photograph appeared in several of the manufactured identification cards as being Adrianna Sosa.

d. **Cockrell** stated that the person whom Ellis knows as "Snow" was involved in the fraud group and is known to **Cockrell** as Jeff Snowden. **Cockrell** stated Snowden would recruit people with open bank accounts, in this case **Ellis**, to deposit fraudulent checks into their bank accounts and then make electronic funds transfers to rechargeable ATM debit card accounts which **Cockrell** would then use to withdraw cash from ATM machines in the Fort Worth area. **Cockrell** stated he would receive half the proceeds of the checks that were negotiated from either **Ellis** or Snowden, and later pay Sosa her portion from his proceeds, usually fifty percent of whatever he made.

e. Affiant showed **Cockrell** electronic funds transfers from **Ellis'** USAA FSB checking account statement for the months of May and June 2019. **Cockrell** confirmed that the transfers which reflect that they were made to "Bryant Dartagan" and "Jasmine L" were wire transfers that were actually made to **Cockrell's** accounts. **Cockrell** stated

that these were two rechargeable debit accounts that he had previously set up using victim's stolen identities. He further advised that he would go to ATM machines in the Fort Worth area and withdraw the funds from those rechargeable debit accounts after **Ellis** had made the transfers and would later pay Sosa her share. The total amount of funds **Cockrell** admitted to receiving from **Ellis** during the above timeframe was $2,914.03.

    f.    **Cockrell** stated that the computer equipment, including laptops, printers, embossers, and card readers seized by Saginaw Police, was being used by him to conduct fraudulent activity.

    11.    On 12/9/19, Affiant received a Report of Activity from Juan Camacho, Fraud Investigator, USAA FSB, detailing the fraudulent activity associated with Federal Deposit Insurance Corporation (FDIC) insured, USAA FSB checking account number XXXXX6906, belonging to **Derrick Ellis**. Investigator Camacho identified 10 fraudulent checks totaling $11,237.10 deposited into this account, to include the two checks from Cox Fine Floors for $1302.10 and $1500.00 on the dates of 5/28/19 and 5/30/19. Investigator Camacho provided records reflecting that the deposits were made via cell phone, through a mobile deposit on USAA's Deposit@Mobile, a service provided by USAA FSB, which allows customers to make check deposits from their mobile phone using image technology. Further research into these deposits revealed the latitudes and longitudes that the deposits were made from were 32.8113 / -97.425962 and 33.023684 / -97.2702733, which using an on-line mapping application, Affiant determined to be in the Greater Fort Worth, TX area. Investigator Camacho identified cell phone # XXX-XXX-8429 listed on the account belonging to **Ellis** as having successfully received a one-time access code used to make these deposits.

    USAA FSB bank records for **Ellis'** checking account number revealed that funds from the fraudulent deposits were later electronically transferred to the following recipients: Bryant Dartagan, Timothy Gerald, Jennifer Matthew, and Jasmine L., which is consistent with the statements **Ellis** made during his interview.

Criminal Complaint – Page 6 of 7

## CONCLUSION

Based on the foregoing facts and information, Affiant submits that there is probable cause to believe that defendants **Charles Addison Cockrell** and **Derrick Trevion Ellis**, did knowingly execute a scheme to defraud and to obtain money under the custody and control of USAA Federal Savings Bank (USAA FSB), a financial institution the deposits of which were federally insured by the FDIC, by causing counterfeit checks to be deposited into a USAA FSB account and thereafter withdrawing cash funds and transferring funds from that account to others, knowing they had no right to the proceeds of said checks in violation of 18 U.S.C. §1344.

Ruben Prieto, Senior Special Agent
United States Secret Service

SWORN AND SUBSCRIBED to before me, at 10:27 am/pm, this 7th day of February, 2020.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

Criminal Complaint – Page 7 of 7